IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| IGNITE RESTAURANT GROUP, INC., *et al.*,[1] | Case No. 17-33550 |
| Debtors. | (Jointly Administered) |

**OBJECTION OF DDR CORP., FOREST CITY REALTY TRUST, INC., GGP LIMITED PARTNERSHIP, AND NATIONAL REALTY & DEVELOPMENT CORP. TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASES TO LANDRY'S**

DDR Corp., Forest City Realty Trust, Inc., GGP Limited Partnership, and National Realty & Development Corp. (each a "Landlord" and, collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, submit this objection (the "Objection") to the proposed assumption and assignment of certain unexpired leases to Landry's, Inc. ("Landry's") contemplated by (i) the *Motion for (A) An Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Approving the Form and Manner of Notice, and (III) Setting Further Hearing on Approval of Sale, and (B) An Order Authorizing and Approving (I) the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests and (II) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: Ignite Restaurant Group, Inc. (1359); Ignite Restaurant Group – RSC LLC (1791); Joe's Crab Shack, LLC (4189); Joe's Crab Shack – Redondo Beach, Inc. (5107); BHTT Entertainment, LLC (9818); Ignite Restaurants – New Jersey, LLC (5907); Joe's Crab Shack – Maryland, LLC (5297); Joe's Crab Shack – Anne Arundel MD, LLC (9318); Brick House Development, LLC (2944); JCS Monmouth Mall – NJ, LLC (3509); JCS Development LLC (4235). The Debtors' service address is: 10555 Richmond Avenue, Houston, Texas 77042.

(the "<u>Sale Motion</u>")[2] and (ii) the *Notice of Prevailing Bid and Backup Bid* (the "<u>Auction Notice</u>,"[3] and together with the Sale Motion, the "<u>Proposed Sale</u>") filed by the above-captioned debtors (the "<u>Debtors</u>").  In support of this Objection, the Landlords respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors seek authorization to assume and assign certain leases at the sale hearing and additional leases in the future to Landry's – the successful bidder for substantially all of the Debtors' assets.  The Landlords have been in discussions with Landry's since the Auction Notice was filed, but the Landlords' adequate assurance concerns have not been satisfied as of the date of this Objection.  Therefore, the Landlords file this Objection out of an abundance of caution in the event that agreements are not reached with Landry's prior to the sale hearing.

2. The Landlords do not seek to prevent the Debtors from completing the sale of their interests in the Leases (as defined below).  As part of the Proposed Sale, however, the Debtors are required by the Bankruptcy Code to (i) cure all defaults under the Leases, (ii) compensate the Landlords for all losses incurred resulting from such defaults, (iii) provide adequate assurance of future performance of the tenant's obligations under the Leases, and (iv) provide a guaranty or other security to the Landlords as they would otherwise require upon initial leasing to the proposed assignee outside of a bankruptcy case.

3. A separate objection (the "<u>Cure Objection</u>")[4] has been filed asserting that (i) the Debtors' proposed cure amounts are incorrect, (ii) the Debtors or any proposed assignee must cure non-monetary lease defaults upon assumption and assignment, and (iii) the Debtors

---

[2]    Docket No. 19.

[3]    Docket No. 537.

must assume or reject the entire lease, and the Landlords reserve their rights in that regard and to supplement the objections set forth herein.

## BACKGROUND

4. The Landlords are the affiliates, owners, or managing agents of the owners of numerous shopping centers located throughout the United States. The Debtors lease retail space from the Landlords pursuant to written leases (each a "<u>Lease</u>" and, collectively, the "<u>Leases</u>")[5] for the stores at the locations listed on the attached <u>Exhibit A</u> (collectively, the "<u>Leased Premises</u>"). The Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

5. On June 6, 2017 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On the Petition Date, the Debtors filed the Sale Motion.

7. On June 25, 2017, the Landlords, filed a limited objection[6] to the bidding procedures in the Sale Motion with respect to the sale timeline, the cure notice and reconciliation procedures, and the sufficiency and timing of delivery of adequate assurance information from

---

[4]   Docket No. 399.

[5]   All Leases and other documents referenced in this Objection can be made available upon written request to the Landlords.

[6]   Docket No. 220.

3

proposed lease assignees. The Landlords worked with the Debtors and consensually resolved their concerns with the bidding procedures in the Sale Motion prior to the hearing.

8. On July 6, 2017, the Court entered the *Order Pursuant to Bankruptcy Code Sections 105, 363 and 365: (A) Scheduling an Auction; (B) Scheduling the Date, Time and Place for a Hearing on the Proposed Sale Motion; (C) Approving the Form and Manner of the Notice of (I) The Proposed Sale of the Debtors' Assets, the Auction and the Sale Hearing, and (II) Proposed Assumption and Assignment of Executory Contracts and Leases; and (D) Approving (I) Bidding Procedures, and (II) Break-Up Fee* (the "Bidding Procedures Order").[7] The Bidding Procedures Order established, among other things, procedures for the sale of certain unexpired leases of the Debtors, including the Leases.

9. On July 14, the Landlords filed the Cure Objection.

10. On August 7, 2017, the Debtors held an auction (the "Auction") for the sale of substantially all of their assets.

11. On August 8, 2017, the Debtors filed the Auction Notice stating that, as a result of the Auction, Landry's was the prevailing bidder and CRIIIKING2017, LLC was the back-up bidder.

12. On August 9, 2017, the Landlords, through counsel, received the purported adequate assurance information (the "Adequate Assurance Information") for Landry's. While the Adequate Assurance Information provided details on, *inter alia*, the financial condition of Landry's, it provided that any leases proposed to be assumed and assigned would not go to Landry's, but to a wholly owned subsidiary.

---

[7] Docket No. 314.

13. The Debtors or Landry's have not filed anything indicating which leases are proposed to be assumed and assigned at the sale hearing and/or which leases are subject to designation rights. Therefore, the Landlords reserve all rights to contest the adequate assurance of future performance of the proposed assignee of any of the Leases, whether at the sale hearing or thereafter (if pursuant to designation rights).

## ARGUMENT

**I.   THE DEBTORS HAVE FAILED TO PROVIDE EVIDENCE OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER THE LEASES**

*(A)   Adequate Assurance of Future Performance for Shopping Center Leases*

14. In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A)   the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)   adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default under such contract or lease.

11 U.S.C. § 365(f)(2).

15. Section 365(b)(1) of the Bankruptcy Code further provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee–
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default…;

> (B)   compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
>
> (C)   provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

16.   In connection with a shopping center lease, adequate assurance of future performance includes adequate assurance

> (A)   of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor…;
>
> (B)   that any percentage rent due under such lease will not decline substantially;
>
> (C)   that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity, … and
>
> (D)   that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

17.   The Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Leases. *In re F.W. Restaurant Assoc.,* Inc., 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

18.   The Adequate Assurance Information solely relates to Landry's, the parent company. However, no adequate assurance information was provided for the specific entities that are proposed to be the assignees of the Leases and Landry's is not required to support these

subsidiaries. As a result, the Landlords demand evidence of each of the actual assignee's adequate assurance of future performance under section 365 of the Bankruptcy Code.

### (B) The Leases Must be Assumed and Assigned *Cum Onere*

19. Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof…." Bankruptcy Courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

20. As the bankruptcy court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach."). The Debtors

7

are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere*–with all benefits and burdens.[8]

21. First, the Debtors or Landry's must provide adequate assurance that it will pay all year-end adjustments (the "<u>Adjustment Amounts</u>"), including, without limitation, adjustments for 2016 and 2017 which have not yet been billed or have not yet become due under the terms of the Leases. The Debtors or Landry's must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of whether such Adjustment Amounts were incurred before or after assumption and assignment of the Leases.

22. Second, to the extent there are repair and maintenance defaults under the Leases, they must be cured in connection with any assignment of the Leases. In addition, Landry's must provide the Landlords with adequate assurance of its ability to comply with the repair, maintenance, and all other non-monetary obligations under the Leases going forward.

23. Third, Landry's must be required to comply with all contractual obligations to indemnify and hold the Landlords harmless with regard to events which occurred before assumption and assignment but which were not known to the Landlords as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by the Debtors or its agents, and (iii) environmental damage or environmental clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) Landry's must be required to assume all responsibility for any and all such claims,

---

[8] *See, e.g.*, *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

notwithstanding anything to the contrary contained in the asset purchase agreement or any sale order, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the Landlords are joined as a party to a lawsuit or for damage and destruction of property by the Debtors or its agents or employees.

24. Finally, the Landlords request that, if Landry's becomes the new tenant under the Leases, Landry's should be required to execute short form assumption and assignment agreements with the Landlords in connection with the proposed assignment of the Leases so that the Landlords will be in privity with their new tenant.

## II.   DEMAND FOR SECURITY

25. Section 365(l) of the Bankruptcy provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

26. In the ordinary course of its business, the Landlords require guaranties, security deposits, or letters of credit when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history.

27. Based on the information provided by Landry's to date, the Landlords would require, as a condition of approving the initial leasing or assumption and assignment of the Leases to a subsidiary of Landry's, that the specific assignee enter into a form of lease

9

guaranty, present a letter of credit or post a security deposit. These demands are not made due to the bankruptcy filing, and would be required of any prospective tenant upon initial leasing.

### III. LEASE DESIGNATION RIGHTS

28. The Proposed Sale contemplates that the Debtors will assume and assign certain leases to Landry's as of the sale hearing, and Landry's will take designation rights – preserving their right to assume and assign or reject the leases – on other leases through October 15. The Landlords do not object to the Debtors' use of designation rights as a component of the Proposed Sale.

29. In the latest version of the APA with Landry's,[9] which was provided with Landry's overbid offer prior to the Auction, the Debtors are required to provide "not less than five (5) Business Days' notice to…[lease and contract counterparties]" of leases that are subject to designation rights. However, it is unclear whether the Landlords would be provided with an opportunity to be heard with respect to a proposed assignment at that time. It is possible that, at the time of the proposed assumption and assignment, the proposed assignee's adequate assurance of future performance may be different than at the time of the sale hearing.

30. Lastly, during the pendency of the designation rights period, the Debtors or Landry's must comply with all obligations under the Leases, including rent, maintenance, tax and any other charges that come due during that time.

### JOINDER IN OBJECTIONS OF OTHER LANDLORDS

31. To the extent not inconsistent with this Objection, the Landlords join in the objections to the Debtors' proposed assumption and assignment of leases asserted by other landlords and contract counterparties.

---

[9] Docket No. 561.

## RESERVATION OF RIGHTS

32. The Landlords reserve the right to amend and/or supplement this Objection, including, without limitation, adding and supplementing objections to proposed cure amounts, adequate assurance information, and to any proposed assignee's ability to perform under the Leases. Further, the Landlords reserve all rights with respect to the proposed sale order and any further revisions thereto.

**WHEREFORE**, the Landlords reserve the right to amend and/or supplement this Objection, including, without limitation, adding and supplementing objections to adequate assurance information and to any proposed assignee's ability to perform under the Leases. Further, the Landlords reserve all rights with respect to the proposed sale order and any further revisions thereto.

Dated: August 14, 2017
       New York, New York

                            KELLEY DRYE & WARREN LLP

                            By: */s/ Robert L. LeHane*
                                Robert L. LeHane, Esq. (*admitted pro hac vice*)
                                Scott L. Fleischer, Esq.
                                101 Park Avenue
                                New York, New York 10178
                                Telephone: (212) 808-7800
                                Facsimile: (212) 808-7897

                                *Counsel for DDR Corp., Forest City Realty Trust, Inc., GGP Limited Partnership, and National Realty & Development Corp.*

**EXHIBIT A**

| Store No. | Shopping Center | Location | Landlord |
|---|---|---|---|
| **DDR Corp.** | | | |
| 10170 | Barrett Pavilion Shopping Center | Kennesaw, GA | DDRT Barrett Pavilion LLC |
| **Forest City Realty Trust, Inc.** | | | |
| 10389 | Bessemer Court | Pittsburgh, PA | Forest City Station Square Associates |
| **GGP Limited Partnership** | | | |
| 10202 | Jordan Creek Town Center | West Des Moines, IA | GGP Jordan Creek LLC |
| **National Realty & Development Corp.** | | | |
| 10287 | Hadley Center I | South Plainfield, NJ | Office Two Limited Partnership |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above pleading was served upon all parties registered to receive notice via the Court's CM/ECF System, on this 14th day of August, 2017.

*/s/ Scott L. Fleischer*
Scott L. Fleischer