IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------
                                            :
In re:                                      :   Chapter 11
                                            :
IGNITE RESTAURANT GROUP, INC., *et al*[1]., :   Case No. 17-33550
                                            :
                                            :   (Jointly Administered)
            Debtors.                        :
                                            :
---------------------------------------------------------

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CLIFTON LIFESTYLE CENTER, LLC IN RESPONSE TO THE ADEQUATE ASSURANCE INFORMATION PROVIDED IN CONNECTION WITH THE DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 (A) AUTHORIZING AND SCHEDULING AN AUCTION AT WHICH DEBTORS WILL SOLICIT THE HIGHEST OR BEST BID FOR THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (B) APPROVING BIDDING PROCEDURES RELATED TO CONDUCT OF AUCTION, (C) APPROVING BREAKUP FEE, (D) APPROVING THE FORM AND MANNER OF NOTICES OF (I) PROPOSED SALE OF THE DEBTORS' ASSETS, THE AUCTION AND THE SALE HEARING, AND (II) PROPOSED ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES, (E) APPROVING THE SALE OF THE ASSETS TO THE PARTY SUBMITTING THE HIGHEST OR BEST BID, AND (F) GRANTING RELATED RELIEF**

Clifton Lifestyle Center, LLC (the "<u>Landlord</u>" or "<u>Clifton Center</u>"), by and through its undersigned counsel, hereby submits this limited objection and reservation of rights (the "<u>Objection</u>") to the adequate assurance information (the "<u>Adequate Assurance Information</u>")[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: Ignite Restaurant Group, Inc. (1359); Ignite Restaurant Group – RSC LLC (1791); Joe's Crab Shack, LLC (4189); Joe's Crab Shack – Redondo Beach, Inc. (5107); BHTT Entertainment, LLC (9818); Ignite Restaurants – New Jersey, LLC (5907); Joe's Crab Shack – Maryland, LLC (5297); Joe's Crab Shack – Anne Arundel MD, LLC (9318); Brick House Development, LLC (2944); JCS Monmouth Mall – NJ, LLC (3509); JCS Development LLC (4235). The Debtors' service address is: 10555 Richmond Avenue, Houston, Texas 77042.

[2] Copies of the Adequate Assurance Information provided by the Debtors is not being submitted herewith in light of confidentiality concerns.

3749008

provided in connection with the Debtors' Emergency Motion For Entry Of An Order Pursuant To 11 U.S.C. §§ 105, 363 And 365 (A) Authorizing And Scheduling An Auction At Which Debtors Will Solicit The Highest Or Best Bid For The Sale Of Substantially All Of Debtors' Assets, (B) Approving Bidding Procedures Related To Conduct Of Auction, (C) Approving Breakup Fee, (D) Approving The Form And Manner Of Notices Of (I) Proposed Sale Of The Debtors' Assets, The Auction And The Sale Hearing, And (II) Proposed Assumption And Assignment Of Executory Contracts And Leases, (E) Approving The Sale Of The Assets To The Party Submitting The Highest Or Best Bid, And (F) Granting Related Relief (the "<u>Sale Motion</u>") [ECF Dkt. No. 19], along with the Certification of Daniel Shea (the "<u>Shea Certification</u>") in support of the Objection that is being filed herewith, and respectfully states as follows:

## BACKGROUND FACTS

1.   Clifton Center as lessor and Joe's Crab Shack, LLC (the "<u>Tenant</u>") as lessee are party to that certain Shopping Center Lease dated September 20, 2010 (the "<u>Lease</u>") with respect to certain property located at The Promenade Shops at Clifton, 850 Route 3, Clifton, NJ (the "<u>Premises</u>").  See Shea Certification at ¶4.  A copy of the Lease can be found annexed as Exhibit A to ECF Dkt. No. 296 and is incorporated into this Objection by reference. See Shea Certification at ¶4.

2.   Among other things, the Lease requires the Tenant to pay monthly base rent, percentage rent, real estate taxes, utilities, operation costs (including fixed charges, variable charges and insurance charges), and other charges and fees, including but not limited to interest and late charges, and all of the Landlord's incurred costs, charges and expenses, including court costs and attorneys' fees.  See Shea Certification at ¶6.

3.      The Lease, which was between Clifton Center and with Crab Addison Group, Inc. d/b/a Joe's Crab Shack, which later converted to Joe's Crab Shack, LLC, also included a parent guaranty that was executed by Ignite Restaurant Group, Inc. to induce Clifton Center to enter into the Lease (the "Guaranty").  See Shea Certification at ¶7 & Exhibit 1. An executed copy of the Guaranty is attached as **Exhibit 1** to the Shea Certification.

4.      On June 6, 2017, the Debtors filed the Sale Motion.

5.      On July 7, 2017, the Bankruptcy Court entered the Order Pursuant to Bankruptcy Code Sections §§ 105, 363, and 365: (A) Scheduling an Auction; (B) Scheduling the Date, Time and Place for a Hearing on the Proposed Sale Motion; (C) Approving the Form and Manner of Notices of: (I) the Proposed Sale of the Debtors' Assets, the Auction and the Sale Hearing, and (II) Proposed Assumption and Assignment of Executory Contracts and Leases; and (D) Approving (I) Bidding Procedures, and (II) Break-Up Fee [ECF Dkt. No. 314] (the "Bid Procedures Order").

6.      On July 7, 2017, pursuant to the Bid Procedures Order, the Debtors filed a Notice Of Cure Amounts And Proposed Assumption And Assignment Of Executory Contracts And Leases (the "Cure Notice") (ECF Dkt. No. 340, as amended by ECF Dkt. Nos. 343, 355 & 544), which asserts that Clifton Center (Contract No. 10293) has an estimated cure amount of $51,897.49 (the "Cure Amount").

7.      On July 14, 2017, Clifton Center filed its response to the Cure Notice (the "Cure Objection") [ECF Dkt. No. 390], which is incorporated into this Objection by reference, and which asserted that (i) the Cure Amount alleged therein was inaccurate insofar as it did not include, *inter alia*, July sewer and reconciliation charges, August sewer and reconciliation charges, as well as interest, late fees, court costs and attorneys' fees, etc., which obligations, charges and fees continue to accrue, and (ii) the Cure Notice incorrectly listed the Lease termination date as September 20,

3749008

2025, even though the "Initial Term Expiration Date" under the Lease is April 30, 2026. Redacted copies of Clifton Center's attorneys' fees in these cases in the amount of $21,788.30 through August 10, 2017 (which continue to accrue), as well as interest and late fee charges in the amount of $5,941.88 through August 28, 2017[3] (which continue to accrue) are attached as **Exhibit 2** to the Shea Certification. See Shea Certification at ¶8 & Exhibit 2.

8. On August 8, 2017, the Debtors filed a Notice of Prevailing Bid and Backup Bid [ECF Dkt. No. 537], which advised that an auction for the sale of the Debtors' assets as further described in the Sale Motion (the "Assets") was conducted on August 7, 2017 and identified Landry's, Inc. as the prevailing bidder (the "Prevailing Bidder") and CRIIIKING2017, LLC as the back-up bidder (the "Backup Bidder").

9. On August 10, 2017, Clifton Center filed its objection to the Sale Motion [ECF Dkt. No. 551] (the "Sale Objection"), which is incorporated into this Objection by reference. The hearing on the sale motion is scheduled for August 17, 2017 (the "Sale Hearing").

10. On August 11, 2017, the Debtors filed the Prevailing Bidder's asset purchase agreement (excluding schedules), dated as of August 11, 2017 (the "APA").

11. The Bid Procedures Order required bids to include, among other things:

> . . . written documentation sufficient and reasonable under the circumstances to demonstrate the bidder's ability to provide adequate assurance of future performance for the benefit of the non-Debtor parties to the Assigned Contracts that constitute real property leases (the "Assigned Leases"), including, without limitation (collectively, the "Adequate Assurance Information") (1) the specific name of the entity to whom the Assigned Lease will be assigned, if not the overbidder, and the proposed name under which the assignee intends to operate the restaurant if not Joe's Crab Shack or Brick House Tavern & Tap; (2) the proposed assignee's intended use for the space if different from the present restaurant operation; (3) if available, audited financial statements and annual reports of

---

[3] The Debtors previously indicated that they anticipate that the closing of the sale of the Assets will occur on or about August 28, 2017.

4

3749008

>       overbidder and any other assignee for the past three years, including all supplements or amendments thereto; (4) if available, cash flow projections for the proposed assignee; (5) evidence of the proposed assignee's restaurant experience and experience operating restaurants in a shopping center (if any); and (6) a contact person for the proposed assignee whom non-Debtor parties may contact directly in connection with adequate assurance of future performance. Should the overbidder be a newly formed entity (a "Newco"), the Adequate Assurance Information should also include when such Newco was formed, how it will be financed together with evidence of firm financial commitments, and identify what (if any) credit enhancements may be available to guarantee the obligations under the Assigned Leases. . . .

Bid Procedures Order, ¶3(a)(iv).

12. On August 8, 2017, the Debtors circulated the proposed Adequate Assurance Information with respect to the Prevailing Bidder and the Backup Bidder.

13. The Backup Bidder's Adequate Assurance Information merely contains the Backup Bidder's name, and a brief description of the three individuals who are described as the "Management Team" and the two individuals who are described as the "Funds." See Shea Certification at ¶9.

14. The Prevailing Bidder's Adequate Assurance Information includes more information, but contains only the consolidated financial statements for the quarter ending March 31, 2017 for the parent entity, Landry's Inc., but not the entity that may potentially assume Lease, which is identified in such information as Crab Shack Acquisition NJ, LLC. See Shea Certification at ¶9. The Prevailing Bidder's Adequate Assurance Information further states that "each restaurant will have the support of Landry's as its parent to the extent that Landry's elects to fund any additional capital to operate." See Shea Certification at ¶9.

15. The Bid Procedures Order further provided that "Non-Debtor parties to the Assigned Leases will have until 3:00 p.m. (Houston time) on the seventh day after the conclusion of the Auction to object to the assumption and assignment of the Assigned Leases on the grounds

5

that adequate assurance of future performance has not been provided." Bid Procedures Order, ¶17. Although the Debtors have not yet identified the "Assigned Leases," Clifton Center hereby files this Objection in light of the imminent deadline.

## **LIMITED OBJECTION AND RESERVATION OF RIGHTS**

16. Section 365(b)(1) of the Bankruptcy Code states:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). "The Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers". *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086 (3d Cir. 1990). Section 365(b)(3) provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance--

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition

> and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3). Section 365(f)(2) expressly states that "[t]he trustee may assign an . . . unexpired lease . . . only if--(A) the trustee assumes such . . . lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such . . . lease is provided, whether or not there has been a default in such . . . lease." 11 U.S.C. § 365(f)(2). The Debtors bear the burden of demonstrating the proposed assignee's ability to provide adequate assurance of future performance. *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

17. As set forth in the Shea Certification, the Lease is a "shopping center" lease entitled to the heightened protections set forth in 11 U.S.C. § 365(b)(3). Factors that should be considered by a court in determining whether a particular lease is a "shopping center" lease include:

> (a) A combination of leases;
> (b) All leases held by a single landlord;
> (c) All tenants engaged in the commercial retail distribution of goods;
> (d) The presence of a common parking area;
> (e) The purposeful development of the premises as a shopping center;
> (f) The existence of a master lease;
> (g) The existence of fixed hours during which all stores are open;
> (h) The existence of joint advertising;
> (j) Contractual interdependence of the tenants as evidenced by restrictive use provisions in their leases;

3749008

      (k) The existence of percentage rent provisions in the leases;
      (l) The right of the tenants to terminate their leases if the anchor tenant terminates its lease;
      (m) Joint participation by tenants in trash removal and other maintenance;
      (n) The existence of a tenant mix; and
      (o) The contiguity of the stores.

*In re Joshua Slocum, Ltd.*, 922 F.2d at 1087-88 (noting that "the most important characteristic will be a combination of leases held by a single landlord, leased to commercial retail distribution of goods, with the presence of a common parking area"). The Premises related to the Lease are a part of The Promenade Shops at Clifton, which center is designed as a shopping center and has center hours when all stores are open, a combination of retail leases held by Clifton Center, a common parking lot, tenants that are required to pay percentage rent and common area maintenance as part of their rental obligations, and leases that have restrictive use provisions and percentage rent provisions, including the Lease. Shea Certification at ¶5. Also, the shopping center has a tenant mix that is carefully planned and maintained to maximize foot-traffic and revenue for all tenants. Shea Certification at ¶5. Finally, and as additional evidence, the Lease is titled "SHOPPING CENTER LEASE," identifies The Promenade Shops at Clifton as the shopping center, and otherwise expressly states that it is in a shopping center. See Lease at ¶1.1(a) ("The Premises are in a Shopping Center known as The Promenade Shops at Clifton"), 1.2(a) ("The building or groups of buildings known as The Promenade Shops at Clifton, together with the real property owned, leased or controlled by Landlord or its affiliates upon which the Shopping Center is located, as presently or hereafter configured, collectively constitute the "Shopping Center" as shown on Exhibit A-1."). Accordingly, the Lease is a lease in a "shopping center" and therefore entitled to the heightened protections of 11 U.S.C. § 365(b)(3).

      18.    Accordingly, the Adequate Assurance Information provided is insufficient for purposes of section 365 of the Bankruptcy Code. The Backup Bidder's Adequate Assurance

8

Information is devoid of any financial information and only contains the Backup Bidder's name with a brief description of five individuals. Although more information was provided in the Prevailing Bidder's Adequate Assurance Information, it related largely to the parent company, Landry's, Inc. and did not contain the information required by the Bid Procedures Order for any newly formed entities, including "when such Newco was formed, how it will be financed together with evidence of firm financial commitments, and identify what (if any) credit enhancements may be available to guarantee the obligations under the Assigned Leases. . . ." Bid Procedures Order, ¶3(a)(iv). At the very least, in connection with any assumption and assignment to the Prevailing Bidder, a guaranty from Landry's, Inc. is required, just as a Guaranty from Ignite Restaurant Group, Inc. was required for the lease with Crab Addison Group, Inc. d/b/a Joe's Crab Shack, which later converted to Joe's Crab Shack, LLC. *See* Shea Certification at **Exhibit 1**. In sum, although the information provided should not qualify as adequate assurance of future performanc under section 365(b) of the Bankruptcy Code, Clifton Center is willing to work with the Debtors, Prevailing Bidder and Backup Bidder to reach comfort with any proposed assumption and assignment, but pending those discussions, the Sale Order should not prejudice its rights.

19. Moreover, as of the date of the filing of this Objection, the assigned contracts and leases have not yet been identified, and Clifton Center's Cure Objection remains outstanding and unresolved. Among other things, Clifton Center's attorneys' fees in these cases in the amount of $21,788.30 through August 10, 2017 (which continue to accrue), as well as interest and late fee charges in the amount of $5,941.88 through August 28, 2017 (which continue to accrue) must be paid in full. See Shea Certification at ¶8 & Exhibit 2; see also Lease at ¶¶15.22 ("Tenant shall pay all of Landlord's costs, charges and expenses, including court costs and attorneys' fees, incurred by Landlord in any litigation, negotiation or transaction in which Tenant causes Landlord, without

9

Landlord's fault, to become involved or concerned"), 15.7 ("Should Tenant fail to pay when due any . . . sum payable to Landlord under the terms of this Lease, then Interest will accrue from and after the date on which any such sum is due and payable. Such Interest, together with a late charge of ten percent (10%) of the delinquent amount, to cover the extra expense involved in holding such delinquency, will be paid by Tenant to Landlord at the time of payment of the delinquent sum.") and 15.6 ("Whenever this Lease refers to 'Interest,' the same will be computed at a rate equal to the prime rate charged by J.P. Morgan Chase Bank, N.A. (or its successor), plus six (6) percentage points or, if lower, then at the maximum rate permitted by law in the State of New Jersey."); *In re Westview 74th Street Drug Corp*. 59 B.R. 747, 756 (Bank S.D.N.Y. 1986) (relying upon section 365(d)(3), courts have "consistently recognized that an express contractual provision for attorneys' fees gives rise to a right to obtain a reasonable attorney's fee as part of curing the debtor's default and in compensation for the landlord's actual pecuniary loss under section 365 of the Code."). Notwithstanding, the Cure Objection remains outstanding.

20.     Additionally, the the Prevailing Bidder's APA is unclear as to whether the purchaser is paying for accrued, but unbilled charges and any indemnity or other olbigations that arise. On one hand, Section 2.3(a) of the Prevailing Bidder's APA, limits the "Assumed Liabilities" to those "related to or arising in connection with the Purchased Assets to the extent *related to events, circumstances and conditions arising after the Closing* and to *be performed solely after the Closing*" (emphasis added). Section 2.3(b) appears to broaden the Assumed Liabilities to include "all liabilities and obligations of Sellers related to arising under the Assigned Contracts," but the phrase Assigned Contracts is defined as "all rights of Sellers under the Contracts that are set forth on Schedule 2.1(a)," which schedule has not been provided and which definition likely does not include any contracts are designated, but later assumed and assigned. The proposed assignee of

the Lease should be responsible for all accrued, but unbilled charges under the Lease, including, but not limited to unpaid year-end adjustments and reconciliations, taxes, attorneys fees or charges whether accruing prior to or after the effective date of assumption and assignment of the Lease, when such charges become due in accordance with the terms of the Lease. This result is mandated by the requirement that the Debtors cure all arrears and provide adequate assurance of future performance under the terms of the Lease. See 11 U.S.C. § 365(b)(1)(A) and 365(f)(2).

21.     The Debtors should be required to provide Clifton Center with notice of an actual (rather than just hypothetical) intent to assume and assign the Lease, which should include the proposed cure amount and sufficient adequate assurance of future performance information. Ultimately, any assumption and/or assignment of the Lease should be conditioned upon, among other things, full compliance with section 365 of the Bankruptcy Code, including, but not limited to, Clifton Center receiving adequate notice and a sufficient opportunity to be heard with respect to any actual proposed assumption and/or assignment of the Lease (rather than simply a hypothetical assumption and assignment of the Lease), and payment to Clifton Center of all amounts due and owing under the Lease through the effective date of assumption and/or assignment of the Lease.  Any proposed assumption and assignment of the Lease to the Proposed Assignee must remain subject to all provisions of the Lease, including, but not limited to, any provisions concerning use, radius, exclusivity, tenant mix and balance set forth in the Lease, which provisions were negotiated between the parties to preserve the control of Clifton Center over the shopping center's environment.

22.     Accordingly, to the extent the Sale Motion seeks to sell any Assets associated with the Lease, without the assumption and assignment of the Lease and all of its associated obligations (including, but not limited to, the execution of a parent guaranty and assumption of all liabilites

such as accrued and unbilled charges, indemnity obligations and year end reconciliations, etc.), Clifton Center objects to the Sale Motion. Given that determinations as to the rejection and the assumption and assignment of unexpired leases are intended to extend beyond the Sale Hearing[4] and pending full resolution of any dispute over the possible rejection or assumption and assignment of the Lease, Clifton Center expressly reserves its rights against the Debtors, the Prevailing Bidder, Back-Up Bidder or any acquirer of the Assets, or any other assignee of them, including its rights (i) to assert that any additional amounts are due or defaults exist under the Lease, (ii) to assert other conditions to assumption and assignment must be satisfied under the Lease, (iii) to object to the assumption and assignment of the Lease, and (iv) assert that any rights and/or assets, including licenses, tangible and intangible property, fixtures and any other items associated with the Lease have not and cannot be purchased by, sold, tranferred or assigned to any acquirer of the Assets notwithstanding the Sale Hearing or entry of any order approving the sale ("<u>Sale Order</u>").

23.    Clifton Center expressly reserves all of its rights under the Lease, including its rights with respect to any obligations owed to it directly from the Debtors, the Prevailing Bidder, Back-Up Bidder or any acquirer of the assets, or any other assignee of them.

## **JOINDER**

24.    Clifton Center hereby joins in the objections filed by the Debtors' other landlords and creditors to the extent that such objections are not inconsistent with the provisions hereof.

## **CONCLUSION**

For the foregoing reasons, Clifton Center respectfully requests that the Court enter an order (a) reserving Clifton Center's rights pending resolution of any issues associated with the rejection

---

[4] The Sale Motion contemplated that the purchaser would have the ability through October 15, 2017 to designate certain leases as either excluded or purchased.

or assumption and assignment of its Lease, (b) modifying the proposed form of Sale Order to account the fact that assigned contracts and leases have not yet been identified and any disputes related to same have not yet been resolved, and (c) granting such other relief as is just and appropriate under the circumstances.

Dated:  August 15, 2017

Respectfully submitted,

**PORZIO BROMBERG & NEWMAN, P.C.**
*Counsel to Clifton Lifestyle Center, LLC*

By:  */s/ Kelly D. Curtin*
Kelly D. Curtin (admitted *pro hac vice*)
100 Southgate Parkway
P. O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
kdcurtin@pbnlaw.com

-and-

Jason L. Boland (SBT 24040542)
Julie Goodrich Harrison (SBT 24092434)
**Norton Rose Fulbright US LLP**
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
Jason.boland@nortonrosefulbright.com
Julie.harrison@nortonrosefulbright.com

*Counsel for Clifton Lifestyle Center, LLC*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was duly served through the Court's CM/ECF system on all parties registered to receive such notice on this 15th of August, 2017.

By: */s/ Julie Goodrich Harrison*
Julie Goodrich Harrison

3749008