**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
08/17/2017

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **IGNITE RESTAURANT GROUP, INC.,** *et al.*,[1] | ) | **Case No. 17-33550** |
| | ) | |
| Debtors. | ) | **(Jointly Administered)** |
| | ) | **(Docket No. 19)** |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OF THE DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 19] (the "Sale Motion") of the above captioned debtors and debtors in possession (collectively, the "Debtors" or "Sellers") for the entry of an order pursuant to Sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to:  (a) enter into that certain Asset Purchase Agreement, dated as of August 11, 2017, between Landry's, Inc., and the Debtors (as amended or otherwise modified from time to time and including all related instruments, documents, exhibits, schedules, and agreements thereto, collectively, the "Agreement"),[2]  (b) sell

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: Ignite Restaurant Group, Inc. (1359); Ignite Restaurant Group – RSC LLC (1791); Joe's Crab Shack, LLC (4189); Joe's Crab Shack – Redondo Beach, Inc. (5107); BHTT Entertainment, LLC (9818); Ignite Restaurants – New Jersey, LLC (5907); Joe's Crab Shack – Maryland, LLC (5297); Joe's Crab Shack – Anne Arundel MD, LLC (9318); Brick House Development, LLC (2944); JCS Monmouth Mall – NJ, LLC (3509); JCS Development LLC (4235).  The Debtors' service address is: 10555 Richmond Avenue, Houston, Texas 77042.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

substantially all of their assets as set forth in the Agreement, including the Purchased Assets, free and clear of all Liens (as defined below), with such sale to be in accordance with the terms and conditions of the Agreement; (c) assume and sell and assign certain executory contracts and unexpired leases to the Purchaser (as defined below); and (d) granting related relief; and this Court having entered an order on July 6, 2017 [Docket No. 314] (the "Bidding Procedures Order") authorizing the Debtors to conduct, and approving the terms and conditions of, an auction as set forth in the Bidding Procedures Order (the "Auction") to consider higher or otherwise better offers for the Purchased Assets, establishing a date for the Auction, and approving, among other things: (i) certain bidding procedures (the "Bidding Procedures") to be used in connection with the Auction; (ii) the form and manner of notice of the Auction and Bidding Procedures; (iii) procedures relating to certain unexpired leases and executory contracts, including notice of proposed cure amounts; and (iv) the Breakup Fee; and the Court having established the date of the hearing on the Sale Motion (the "Sale Hearing"); and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and in consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in these chapter 11 cases, including the Sale Motion, the affidavit of service regarding the Sale Motion [Docket No. 63], and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT**:[3]

A.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.  The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein and the closing of all transactions contemplated hereby without regard to any stay or delay in its implementation.

---

[3]     All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

E.  The statutory bases for the relief requested in the Sale Motion and for the approvals and authorizations herein are (i) Sections 102, 105, 363 and 365 of the Bankruptcy Code, and (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014.

F.  On June 6, 2017 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

G.  As evidenced by the certificates of service filed with the Court [Docket Nos. 63 and 329], proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with Sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008, and 9014, the local rules of the Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bidding Procedures Order.  The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract or lease listed on the notice of assumption, sale, and assignment of designated unexpired leases and executory contracts filed on July 7, 2017, [Docket No. 320] (the "Assigned Contracts") to each non-debtor party under each such Assigned Contract.  Such notice was good and sufficient and appropriate under the particular circumstances.  No other or further notice of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, or of the entry of this Order is necessary or shall be required.

H.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) all entities that claim any interest in or lien upon the Purchased Assets, (ii) all non-debtor parties to Assigned

Contracts assumed and sold and assigned pursuant to this Order, (iii) all governmental taxing authorities that have, or as a result of the sale of the Purchased Assets may have, Claims, contingent or otherwise, against the Debtors, (iv) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002, (v) all creditors (whether their Claims are liquidated, contingent, or unmatured) of the Debtors, (vi) all interested governmental, pension and environmental authorities, (vii) the Office of the United States Trustee for the Southern District of Texas, and (viii) all entities that heretofore expressed to the Debtors a serious interest in purchasing the Purchased Assets.  Other parties interested in bidding on the Purchased Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

I.   The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

J.   The Debtors have demonstrated a sufficient basis and the existence of reasonable and appropriate circumstances requiring them to enter into the Agreement, sell the Purchased Assets, and assume and assign the Assigned Contracts under Sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their stakeholders.

K.  The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, substantively and procedurally fair to all parties, and were the result of arm's length negotiations between the Debtors and the Landry's, Inc.

L.   The Debtors and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the

record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtors (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (c) considered any bids submitted on or before the deadline to submit bids as set forth in the Bidding Procedures (the "Bid Deadline").

M. On July 19, 2017, Landry's, Inc. filed the Notice of Superseding Offer by Landry's Inc. to its Proffered June 7, 12, and 22, 2017 Stalking Horse Bid [Docket No. 330] containing a proposed Amended and Restated Asset Purchase Agreement between the Debtors and Landry's, Inc. ("Landry's"), which was deemed to be the Overbid Offer (as defined under the Bidding Procedures Order).  Landry's has certain rights to assign its rights and obligations under Section 13.3 and 13.10 of the Agreement.  To the extent Landry's effects one or more assignments pursuant to Section 13.3 and 13.10 of the Agreement, the assignees shall be the Purchaser hereunder.  Landry's, or in the event of an assignment under Section 13.3 or 13.10 of the Agreement its permitted assignee, is the "Purchaser" hereunder.

N. There were four (4) Qualified Bidders that participated in the Auction.  Landry's submitted the highest or otherwise best offer and Landry's is the bidder that submitted the Prevailing Bid for the Purchased Assets in accordance with the Bidding Procedures Order.  The Bidding Procedures obtained the highest value for the Purchased Assets for the Debtors and their estates.

O. The offer of Landry's, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the

Agreement, (i) is the highest or best offer received by the Debtors, (ii) is fair and reasonable, (iii) is in the best interests of the Debtors' stakeholders and estates, (iv) constitutes full and fair consideration and reasonably equivalent value for the Purchased Assets, and (v) will provide a greater recovery for the Debtors' creditors, shareholders and other interested parties than would be provided by any other practically available alternative.

P.  The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code and the decisions thereunder.  The Purchaser is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Section 363(m) and (n) of the Bankruptcy Code with respect to all of the Purchased Assets.  The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind.  Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of, or implicate, Section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the sale transaction and transfer of the Purchased Assets and Assigned Contracts to the Purchaser.  The Purchaser is purchasing the Purchased Assets (including the Assigned Contracts) in good faith and is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets, (ii) the Purchaser complied with the provisions in the Bidding Procedures Order, (iii) all consideration to be paid by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the sale have been disclosed, (iv) the Purchaser has not violated Bankruptcy

Section 363(n) of the Bankruptcy Code by any action or inaction, and (v) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith.

Q.  The Debtors have full corporate power and authority to execute the Agreement (and all other documents contemplated thereby) and consummate the transaction contemplated therein, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate actions on the part of by the Debtors.  No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

R.  The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Purchased Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets and to consummate the transactions contemplated by the Agreement.  Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Assigned Contracts is a legal, valid, and effective transfer of the Purchased Assets (including the Assigned Contracts).

S.  The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

T.  The Purchased Assets shall be sold free and clear of any and all liens (statutory or otherwise, including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), hypothecations, encumbrances, security interests,

mortgages, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), charges, instruments, preferences, priorities, security agreements, conditional sales agreements, title retention contracts, options, Claims, judgments, offsets, rights of recovery, rights of pre-emption, rights of first refusal or other third party rights, Claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or Tax (including Claims for any and all foreign, federal, state and local Taxes), decrees of any court or foreign or domestic governmental entity, orders of any Governmental Authority, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, and (iii) any Claim based on any theory that the Purchaser is a successor or a continuation of the Debtors or the Debtors' business), reclamation Claims, obligations, liabilities, demands, and guaranties, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including Claims otherwise arising under doctrines of successor liability (collectively, the "Liens"), other than the Permitted Liens.

U. The Liens (other than the Permitted Liens) shall attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the closing of the transactions contemplated by the Agreement (the "Closing"),

and the Purchaser would not enter into the Agreement to purchase the Purchased Assets otherwise.

V. The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and shall vest Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of any and all Liens (other than the Permitted Liens). Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens (other than the Permitted Liens) relating to the Purchased Assets being sold by the Debtors.

W. The transfer of the Purchased Assets to the Purchaser free and clear of all Liens (other than the Permitted Liens) will not result in any undue burden or prejudice to any holders of any Liens, because all such Liens of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens (other than the Permitted Liens) against the Purchaser, any of its assets, property, successors or assigns, or the Purchased Assets.

X. The Debtors may sell the Purchased Assets free and clear of all Liens of any kind or nature whatsoever (other than the Permitted Liens) because, in each case, one or more of the standards set forth in Section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens and (ii) non-debtor parties to the Assigned Contracts, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are

deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code.  Except as set forth below, all objections to the Sale Motion, including objections by non-debtor parties to the Assigned Contracts, have been overruled or resolved.  Those holders of Liens who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the proceeds of the sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Liens, with such Liens being subject to treatment as prescribed in the Debtors' chapter 11 plan or by separate order of this Court.

Y.  Not selling the Purchased Assets free and clear of all Liens (other than the Permitted Liens) would adversely impact the Debtors' estates, and the sale of Purchased Assets other than one free and clear of all Liens (other than the Permitted Liens) would be of substantially less value to the Debtors' estates.

Z. The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of Section 365 of the Bankruptcy Code, including Subsections 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assigned Contracts.  The Purchaser has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code. Landry's, Inc. is an established and substantial company that has decades of experience in managing operations of this type.  Its brands extend across all ranges of the casual and fine dining market.  Its operations and its need to ensure and protect its reputation against default together with its track record of operating profitably provides counterparties with a level of adequate assurance of future performance and protection against subsequent default under the Assigned Contracts that meets the requirements of Section 365 of the Bankruptcy Code.  The

assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their stakeholders and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

AA.     The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.  The Debtors shall have sole responsibility for paying all Cure Costs required to assume and assign the Lease Cure Contracts to the Purchaser.  The Purchaser shall have the sole responsibility for paying the Cure Costs for all other Assigned Contracts. Pursuant to Section 7.5 of the Agreement, the Purchaser shall maintain certain rights to modify the list of Assigned Contracts after the date of this Order and up to October 15, 2017 as set forth in such section.  Such modification rights include, but are not limited to, the right of the Purchaser, prior to the applicable Contract Designation Deadline, to designate certain Designation Rights Assets for assumption by the Debtors and assignment to the Purchaser.  The Purchaser would not have agreed to the transactions set forth in the Agreement without such modification rights.  The notice and opportunity to object provided to the contract counterparties to such contracts and to other parties in interest, as set forth in the Bidding Procedures Order and Agreement, fairly and reasonably protects any rights that such contract counterparties and other parties in interest may have with respect to such contracts.

BB.     Pursuant to Section 2.10(i) of the Agreement, the Debtors are further required to enter into the Management Agreement set forth as Exhibit B to the Agreement. The Purchaser would not have agreed to the transactions set forth in the Agreement without the Debtors' entry into the Management Agreement. The notice and opportunity to object provided to the Debtors'

parties in interest, as set forth in the Bidding Procedures Order and Agreement, fairly and reasonably protects any rights of any party in interest.

CC.    The Purchaser will be acting in good faith, pursuant to Section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

DD.    The transactions contemplated under the Agreement do not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.

EE.    The total consideration provided by the Purchaser for the Purchased Assets was the highest or best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

FF.    Time is of the essence in consummating the sale. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

GG.    At and effective as of the Closing, the Purchaser shall assume sole responsibility for paying and satisfying the Assumed Liabilities, including all liabilities and obligations of Sellers related to or arising under the Assigned Contracts.  For the avoidance of doubt, nothing in this Order (including, without limitation, any provisions in this Order regarding the sale, transfer or conveyance of the Purchased Assets free and clear of Liens) nor in the Agreement shall be construed to mean that the Purchaser is not assuming from the Debtors and thereafter becoming solely responsible for the payment, performance and discharge of the Assumed Liabilities.  After the Closing, the Debtors shall have no liability whatsoever with respect to the Assumed Liabilities.  The Purchaser shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Sale Motion is granted in its entirety and the Agreement is approved, subject to the terms and conditions contained herein.

2.    Except as set forth in paragraphs 53 and 54 of this Order, all objections, responses, reservations of rights, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response, reservation of rights, or request for continuance was not otherwise withdrawn, waived, or settled, it is overruled and denied on the merits.

3.    Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, and 6006.

4.      The sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.      The sale of the Purchased Assets and the consideration provided by the Purchaser under the Agreement are fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.      The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith purchaser under Section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assigned Contracts as part of the sale of the Purchased Assets pursuant to Section 365 of the Bankruptcy Code and this Order.

7.      The Debtors shall be, and hereby are, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Agreement together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating the terms of the Agreement, this Order, and/or the sale of the Purchased Assets including, without limitation, the Management Agreement, guaranties, intercreditor agreements, certificates, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession, any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court.

8.      The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements or instruments related thereto or this Order, and their respective directors, officers, managers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement and this Order, to carry out all of the provisions of the Agreement and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement and any related agreements or instruments; to take any and all actions contemplated by the Agreement, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, guaranties, intercreditor agreements, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements or instruments, and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, managers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, managers, employees, members, agents, representatives, and attorneys of such entities.  The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable).  The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental

Authority any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Authorities or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate laws of the states of formation of each Debtor and all other applicable business, corporation, trust, and other laws of the applicable Governmental Authorities with respect to the implementation and consummation of the Agreement, any related agreements or instruments and this Order, and the transactions contemplated thereby and hereby.

9. To the fullest extent permitted by law, effective as of the Closing, (a) the sale of the Purchased Assets by the Debtors to the Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any Person and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets, free and clear of all Liens of any kind (other than the Permitted Liens) pursuant to Section 363(f) of the Bankruptcy Code, and (b) the assumption of the Assumed Liabilities by the Purchaser shall constitute a legal, valid and effective delegation and assignment of all Assumed Liabilities to the Purchaser and shall divest the Debtors of all liability with respect to any Assumed Liabilities. Unless otherwise agreed to by the Debtors and the Purchaser, the Closing Date shall be August 29, 2017, and Closing shall be deemed to occur at 12:01 a.m. (Pacific Time) on August 29, 2017. For the avoidance of doubt, the Purchaser shall

be responsible for performing under the Assigned Contracts in accordance with the provisions of Agreement.

10. The sale of the Purchased Assets is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

11. At the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to Sections 105, 363(b), and 365 of the Bankruptcy Code, to sell the Purchased Assets, including the Assigned Contracts, to the Purchaser. The sale of the Purchased Assets shall vest the Purchaser with all right, title and interest of the Debtors to the Purchased Assets free and clear of any and all Liens (other than the Permitted Liens) with all such Liens to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and defenses the Debtors may possess with respect thereto. Following the Closing Date, no holder of any Liens in the Purchased Assets (other than the Permitted Liens) shall interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Liens, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

12. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens (other than the Permitted Liens) shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. However, the Debtors and the Purchaser, and each of their respective officers, employees, and agents are hereby authorized and empowered to take all

actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary, desirable or appropriate to implement and effectuate the terms of the Agreement and this Order.

13.     On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens (other than the Permitted Liens) of any kind against the Purchased Assets, as such Liens may have been recorded or may otherwise exist.  Except as expressly provided in the Agreement, if any Person that has filed financing statements or other documents or agreements evidencing any Liens in or against the Purchased Assets (other than the Permitted Liens) shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens that the Person has with respect to the Purchased Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

14.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, approval, certificate of occupancy, authorization, operating permit, registration, plan and the like of any Governmental Authority relating to the Purchased Assets, and all such licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like of any Governmental Authority are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing Date.  Furthermore, immediately upon the Closing, the Purchaser shall be entitled to continue to sell alcoholic beverages at the premises included in the Purchased

Assets upon the same terms as the Debtors were selling such alcoholic beverages, until such time as the Purchaser has had the time and opportunity to obtain its own Liquor Licenses (as defined in the Agreement).

15.     All of the Debtors' interests in the Purchased Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser.  Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

16.     Except as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliate of the Purchaser.

17.     Except as otherwise expressly provided in the Agreement, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all

other actions as may be necessary to release their respective Liens (other than the Permitted Liens) against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

18.        Except as otherwise expressly provided in the Agreement, all Persons presently or on or after the Closing Date in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

19.        Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assigned Contracts and the sale and assignment of such agreements and unexpired leases to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to Sections 363 and 365 of the Bankruptcy Code.

20.        The Assigned Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and sold and assigned to the Purchaser at the Closing (or such later date pursuant to Section 7.5 of the Agreement), pursuant to Sections 363 and 365 of the Bankruptcy Code, subject only to the payment of the Cure Costs.

21.        Upon the Closing (or such later date pursuant to Section 7.5 of the Agreement), in accordance with Sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest in and to each Assigned Contract.  The Debtors shall reasonably cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

22.        Pursuant to Sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, the Debtors or the Purchaser, as applicable pursuant to Section 2.5 of the Agreement, shall promptly pay at Closing or cause to be paid at Closing (or, with

respect to Designation Rights Assets, promptly following the date that such contract becomes an Assigned Contract) to the non-debtor parties to any Assigned Contracts the requisite Cure Costs, if any, set forth on the amended notice filed with the Court on August 17, 2017 (the "Cure Costs Schedule") [Docket No. 613], except to the extent that a Cure Cost was amended on the record of the Sale Hearing, following the assumption and assignment thereof.  The Cure Costs are hereby fixed at the amounts set forth on the Cure Costs Schedule, or the amounts set forth on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Assigned Contracts are forever bound by such Cure Costs. For the avoidance of doubt, all counterparties to any of the Debtors' executory contracts or unexpired leases that are Designation Rights Assets shall also be forever bound by such Cure Costs.

23.      All defaults or other obligations under the Assigned Contracts arising prior to the Closing (without giving effect to any acceleration clauses, assignment fees, increases, advertising rates, or any other default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Costs.

24.      Any provision in any Assigned Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assigned Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any.   No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor party to the Assigned Contract shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under Section 365(e) of the Bankruptcy

Code and no assignment of any Assigned Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Assigned Contract. The non-debtor party to each Assigned Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the Debtors' rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

25.     The Purchaser has satisfied all requirements under Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assigned Contracts.

26.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assigned Contracts occurring from and after Closing, pursuant to and in accordance with Section 365(k) of the Bankruptcy Code.

27.     Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing or arising by reason of the Closing, except for any amounts that are Assumed Liabilities being assumed by the Purchaser under the Agreement.

28.     Notwithstanding anything to the contrary herein, the Purchaser shall have the right, with respect to the Designation Rights Assets, to notify the Debtors of the Purchaser's intention to include an as Assigned Contract or as a Purchased Asset, any Designation Rights Asset, through October 15, 2017. The Debtors shall provide the counterparties of the Debtors'

executory contracts and unexpired leases of the Purchaser's intention to assume any Designation Rights Asset. For the avoidance of doubt, any reference in this order to "Assigned Contracts" or "Purchased Assets", unless otherwise indicated, shall include any Designation Rights Asset that becomes an Assigned Contract and/or Purchased Asset after the date of this Order, subject to the terms and conditions of the Agreement.

29.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order. This Order and the Agreement shall be binding upon and govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

30.     To the extent permitted by Section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the Agreement.

31.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the Agreement, and the Purchaser has not purchased any of the Debtors' assets expressly excluded from the Purchased Assets pursuant to the Agreement (the "Excluded Assets"). Consequently, all Persons, Governmental Units (as defined in Sections 101(27) and 101(41) of the Bankruptcy Code) and

all holders of Liens (other than the Permitted Liens) based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Purchased Assets to recover any Liens or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement.  All persons holding or asserting any Liens in the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or any cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets.   Notwithstanding any provision in this Sale Order, the Asset Purchase Agreement, and the Management Agreement, (i) the lease for the Sellers' store no. 10298 previously operated at Monmouth Mall in Eatontown, NJ and (ii) the applicable liquor license (State and Local Liquor Licenses 1311-33-011-010 LLIQ and 1311-33-011-010 SLIQ issued by the State of New Jersey and Eatontown, New Jersey) are Excluded Assets that will not be sold or otherwise transferred pursuant to the Sale Order, the Asset Purchase Agreement or the Management Agreement.

32.     The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, or similar liability except for the assumption of the Assumed Liabilities as expressly provided in the Agreement.  Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Agreement, neither the purchase of the Purchased Assets by the Purchaser, nor the fact that the Purchaser is using any of the Purchased Assets previously operated by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors' business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment,

environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

33.    Further, except as provided in the Agreement, transfer of title and possession of the Purchased Assets shall be free and clear of any Claims pursuant to any successor or successor-in-interest liability theory, including the following:  (a) any employment or labor agreements, (b) all deeds of trust and security interests, (c) any pension or medical benefit plan of the Debtors, compensation or other employee benefit plan of the Debtors, welfare, agreements, practices and programs,  (d) any other employee,  worker's  compensation,  occupational disease  or unemployment or temporary disability related claim, including, without limitation, Claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985 (unless otherwise provided for under such statute and any regulations promulgated thereunder), (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or Claims relating to any employment with the Debtors or any predecessors, (e) environmental or other Claims or Liens arising from existing conditions on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including,  without  limitation,  under  the  Comprehensive  Environmental  Response,

Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or other state or federal statute, (f) any bulk sales or similar law, (g) any Tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and (h) any and all theories of successor liability, including any theories on successor products liability grounds or otherwise.

34.     Except to the extent expressly included in the Assumed Liabilities or provided in the Agreement, the Purchaser and its affiliates shall have no liability, obligation, or responsibility under the WARN Act (29 U.S.C. §§ 210 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

35.     Except to the extent expressly included in the Assumed Liabilities, pursuant to Sections 105 and 363 of the Bankruptcy Code, all Persons including, but not limited to, the Debtors, the official committee of unsecured creditors, all debt holders, equity security holders, the Debtors' employees or former employees, Governmental Authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien of any kind or nature whatsoever against, in, or with respect to any of the Debtors or the Purchased Assets (other than the Permitted Liens), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Lien, including assertion of any right of setoff or subrogation, and enforcement, attachment, or collection of any judgment, award, decree, or order, against the Purchaser or any affiliate, successor or assign thereof and each of their respective current and former members, officers,

directors, attorneys, employees, partners, affiliates, financial advisors, and representatives (each of the foregoing in its individual capacity), or the Purchased Assets.

36.     Without limiting the generality of the foregoing, except as otherwise specifically set forth in the Agreement, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations, and liabilities of the Debtors arising pursuant to state law or otherwise.  This Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation Claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation Claims filed or to be filed, or reopenings of those Claims, by or on behalf of any of the Debtors' current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability, except as otherwise specifically set forth in the Agreement.

37.     The Debtors are authorized and required, without further need of any authorization from the Court, to transfer immediately, and in no event later than 10 days, to the Purchaser any cash or receipts received by the Debtors that should have been submitted to or is the property of the Purchaser pursuant to the Agreement.

38.     Subject to the terms of the Agreement, the Agreement and any related agreements and/or instruments may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that

any such waiver, modification, amendment, or supplement is not materially adverse to the Debtors and substantially conforms to, and effectuates, the Agreement and any related agreements and/or instruments and this Order.

39.     The failure specifically to include any particular provisions of the Agreement or any related agreements or instruments in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court, the Debtors, and the Purchaser that the Agreement and any related agreements and instruments are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

40.     Nothing contained in this Order shall affect or impair the claims, rights, and powers of the United States of America; provided, however, that, except as otherwise provided in the Agreement, any such claims, rights or powers of the United States of America shall not be construed in any way as Assumed Liabilities under this Order or the Agreement.

41.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

42.     This Order and the Agreement shall be binding upon and govern the acts of all Persons including, without limitation, the Debtors and the Purchaser, their respective successors, and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or

otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

43.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

44.     Notwithstanding Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any Person obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement.  In the absence of any Person obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

45.     The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Agreement and the provisions of this Order.

46.     Notwithstanding anything to the contrary elsewhere in this Order or in the Asset Purchase Agreement with the Purchaser, Ecolab Inc. ("Ecolab") owns the dish washing machines and other Ecolab-owned equipment or property (collectively, the "Ecolab Property") provided to the Debtors pursuant to the July 1, 2013 agreement with Debtors, (as amended, the "Ecolab Agreement"), which Ecolab Property is located at multiple Debtors locations.  The ownership

rights in Ecolab Property shall not be included within the definition of the Purchased Assets sold to the Purchaser.  Possession of the Ecolab Property at each location shall be transferred to the Purchaser only upon the assumption and assignment of the Ecolab Agreement or as otherwise provided in connection with the terms of this Order governing the assumption and assignment of contracts, or as otherwise agreed between Purchaser, the Debtors and Ecolab in writing.

47.     In the event that the Ecolab Agreement is included as an Assigned Contract, the cure amount under the Ecolab Agreement shall be $135,608.31.  As the amounts owed by the Institutional Division are principally for the lease of personal property—dish machines—the Debtors/Sellers shall pay $74,930.71, of the total cure amount, and the Purchaser shall pay the remaining cure amount of $60,677.60, upon the assumption of the Ecolab Agreement.  The cure amounts set forth in this paragraph are pre-petition date cure amounts, and do not include the amounts owed for post-petition use or rental of the Ecolab Property or post-petition supply of goods and chemicals under the Ecolab Agreement, which amounts shall also be paid pursuant to the Asset Purchase Agreement in the event of assumption of the Ecolab Agreement.

**Provisions regarding Sale of Surplus Assets**

48.     The Debtors are authorized to, from time-to-time and without further order of this Court, sell certain Excluded Assets that are obsolete, excessive, or burdensome ("Surplus Assets") for consideration not to exceed $250,000 per transaction.  For the avoidance of doubt, Surplus Assets shall not include any Designation Rights Asset. The Debtors shall not sell property in excess of $250,000 per transaction without further order of this Court.

49.     If the consideration for a particular sale of Surplus Assets is less than $250,000, the Debtors are authorized to consummate such sale pursuant to the following procedures:

    A.     The Debtors shall give written notice of the proposed sale (the "Sale Notice") via e-mail, facsimile or overnight courier to the United States

Trustee for Region 7; counsel for the Committee; counsel for Credit Suisse AG, Cayman Islands Branch, as administrative agent to the Debtors' prepetition lenders; and any known holder of a Lien on the property proposed to be sold (collectively, the "Notice Parties").

B. The Sale Notice shall specify the Surplus Assets to be sold, the identities of the seller and the proposed purchaser, and the purchase price.

C. The Notice Parties shall have three (3) business days from the date the Sale Notice is sent to provide the Debtors with a written objection to the proposed transaction. Any such objection shall specify the basis for the objection and shall be addressed to Sarah R. Borders (sborders@kslaw.com), Jeffrey R. Dutson (jdutson@kslaw.com), and Elizabeth T. Dechant (edechant@kslaw.com) at King & Spalding LLP, 1180 Peachtree Street N.E., Atlanta, Georgia 30309.

D. If no written objection is received by the Debtors by 5:00 p.m. eastern time on the third (3rd) business day following the Sale Notice, the Debtors shall be authorized to consummate the proposed sale transaction, and any entities having a Lien on the property sold shall be deemed to have consented to the sale.

E. If a Notice Party provides a timely written objection to the proposed transaction, the Debtors and such objecting Notice Party shall use good faith efforts to consensually resolve the objection. If the objection is resolved, the Debtors shall be authorized to consummate the proposed sale transaction, and any entities having a Lien on the property sold shall be deemed to have consented to the sale. If the Debtors and the objecting Notice Party are unable to reach a consensual resolution, the Debtors shall be required to seek Court approval of the proposed transaction before consummating the proposed transaction.

50. As soon as practicable after each sale of Surplus Assets, the Debtors shall file a report of sale in accordance with Bankruptcy Rule 6004(f)(1).

51. Pursuant to Section 363(f) of the Bankruptcy Code, any Surplus Assets sold shall be sold and transferred free and clear of all Liens thereon, if any, with any such valid and perfected Liens to attach to the net sale proceeds, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties to any asserted Liens. The Debtors shall be authorized to negotiate, execute, and deliver any transfer, sale, and/or assignment documents that are necessary, desirable, or appropriate in connection with consummating sales

of Surplus Assets in accordance with this Order. The Debtors may use the proceeds of any such sale solely in accordance with the terms and conditions of the Final Order (1) Authorizing the Debtors to Use Cash Collateral, (2) Granting Adequate Protection to Lenders, and (3) Modifying the Automatic Stay [Docket No. 481].

52. Pursuant to Section 13.3 of the Agreement, Purchaser may assign its rights thereunder provided that the Debtors consent to such assignment in writing.  To the extent such assignment is effected, the definition of "Purchaser" hereunder shall include any such assignee. The provisions of this Order shall be binding on and inure to the benefit of all successors and assignees of Sellers and the Purchaser.   Nothing herein shall limit the rights provided under Section 13.10 of the Agreement.

53. Notwithstanding any provision in this Order, the determination of whether the Debtors may assume and assign certain contracts and leases pursuant to Section 365 of the Bankruptcy Code, including but not limited to, determination as to the appropriate cure amount (unless such cure amount was resolved at or prior to the Sale Hearing) and adequate assurance of future performance by the Purchaser as to each of the following listed parties, shall be expressly reserved for further proceedings pending the Purchaser's further determination whether to assume and have assigned the contract or lease the Debtors have with these parties, at which time the Purchaser and each of these listed objecting parties may schedule a further hearing before the Court on the issue of adequate assurance of future performance and/or appropriate cure amount on at least seven (7) days' prior notice to the parties affected:  Oracle America, Inc. [Dkt. No. 541]; Brixmor Property Group, Inc.; BRE Throne Preston Park, LLC [Dkt. No. 542]; 8400 I-Drive, LLC [Dkt. No. 543]; Fair Lakes Crabhouse, L.C.; Washingtonian Associates L.C.; Navillus Group, LLC [Dkt. No. 545]; Clifton Lifestyle Center, LLC [Dkt. No. 551]; Kir Latham

Farms, L.P. [Dkt. No. 552]; Eastern Coastal Properties, LLC [Dkt. No. 556]; Jordan Commons, LLC [Dkt. No. 557]; Broadhurst Theatre, LLC [Dkt. No. 570]; DDR Corp.; Forest City Realty Trust, Inc.; GGP Limited Partnership; National Realty & Development Corp. ("NRDC")[4] [Dkt. No. 572]; 2004 Park Family Trust [Dkt. No. 573]; 8400 I-Drive, LLC [Dkt. No. 575]; Clifton Lifestyle Center, LLC [Dkt. No. 588]; 8250 Dean Road, LLC [Dkt. No. 589]; and 3503 RP Cedar Hill Pleasant Run Limited Partnership f/n/a Inland Western Cedar Pleasant Run Limited Partnership [Dkt. No. 592] (collectively, the "Objecting Parties"). Provided, however, nothing herein shall alter or amend any scheduled hearing on cure costs. Pending such further determinations, no assets associated with the Objecting Parties' contracts and leases shall be deemed sold or assigned to Purchaser, and the rights of the Objecting Parties under Section 365 of the Bankruptcy Code with respect to adequate assurance of future performance are fully preserved. Provided, however, that: (a) the foregoing Contracts and Leases shall be Designated Rights Assets until such time as the Court resolves such outstanding objection; and (b) the failure of the Purchaser to provide adequate assurance of future performance at such hearing with respect to any Designation Rights Asset and any resulting failure of assignment of such Designation Rights Asset shall not result in any adjustment to the Purchase Price or otherwise give rise to any liability on the part of the Sellers.  Furthermore, nothing in this Order shall prejudice the right of any party to object to the assumption and assignment of any Contract in the event that the Debtors breach their obligations under the Contract after the date hereof and prior

---

[4]        The cure amount for store no. 10287 has been agreed to in part and reserved in part as follows:  the monetary cure amount has been resolved by the Debtors' agreement to pay NRDC $28,434.18 upon the assumption and assignment of such lease; NRDC's rights with respect to the non-monetary default remaining under the lease are reserved, including the determination of adequate assurance of future performance and the right to assert additional attorneys' fees for pecuniary losses strictly related to such default.

to the assumption and assignment of the Assigned Lease; provided, however, that the counter party to any such Contract must give the Debtors notice in writing by email to jdutson@kslaw.com of the breach within three (3) business days of such counter party having knowledge of the occurrence of the breach.  Subject to any subsequent determination that all equitable and legal rights of the Debtor in the Jordan Commons lease are terminated pre-petition, Debtor and Purchaser acknowledge that the Jordan Commons Lease shall not be part of the transferred property.

54.     Further, pursuant to the APA and the Management Agreement, obligations owed to the Objecting Parties shall be fulfilled as they come due, including any rent payments or requirements related to insurance policies provided in the Objecting Parties' contracts and leases. Notwithstanding any provision of this Order, the Objecting Parties shall retain all of their rights regarding the Debtors' timely performance of all obligations under the Objecting Parties' contracts and leases, including without limitation their rights under Section 365(d)(3) of the Bankruptcy Code, until such time as the Debtors reject or assume and assign the Objecting Parties' contracts and leases.

55.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Liens (except Permitted Liens).

**SIGNED: August 17, 2017.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**